# PETER R. JASPERS

## *vs.*

# PETER LANO.

It is error in the judge to refuse to instruct the jury, if they find a general verdict, to find upon a particular question of fact stated in writing, and direct a written finding thereon, for the reason that he erroneously supposed he had not the power to do so.

In this case the jury had returned into court, and handed the judge a pap t designed to be a verdict in favor of plaintiff, but informal and defective. *Held*, that in requiring them to retire to reconsider their finding, and return a verdict in proper form, they might also be directed to find on such particular question of fact aforesaid ; but as the power exists in the exercise of a sound discretion, it would not be error to refuse to direct them to answer an irrelevant or immaterial question, or one too uncertain and indefinite to admit of a categorical answer.

The boundary line between plaintiff and defendant being in dispute in this action, and plaintiff having testified that he was over the line with defendant at a time specified; that defendant then showed him the line; and having stated on cross-examination that B. was with them, the further question, "was B. then surveying the line ?" was held to have been rightly excluded, as not proper cross-examination.

A witness for plaintiff was asked on cross-examination if he had not made certain statements out of court, at a time and place and to persons specified, as to matters relevant to the issue, and denied it. Defendant then introduced testimony that he had. *Held*, that plaintiff might recall the witness and examine him as to such testimony.

This suit was brought in the district court for Carver county, to determine the boundary line between two tracts of land, one of which was owned by each of the parties. The jury

Jaspers v. Lano.

before whom the action was tried found a verdict for the plaintiff. The defendant made a motion for a new trial, which was granted, and the plaintiff appeals from the order granting the same to this court. The case, in regard to the questions discussed in the opinion of the court, is fully stated therein.

HENRY HINDS, for Appellant.

R. A. IRWIN and MASTERSON & SIMONS, for Respondent.

*By the Court.*—RIPLEY, CH. J.

N.

E. ½ N. E. ¼        N. W. ¼

¼ Post

SEC. 31.                        SEC. 32.

The plaintiff owns the east half of the northeast quarter of section thirty-one; the defendant, the northwest quarter of section thirty-two, township one hundred and sixteen, range twenty-three, and they differ in respect to their dividing line; the accompanying diagram shows how; that is to say, the plaintiff contends that the line between said sections is straight, while the defendant insists that by the United States survey it was actually run and marked on the land '2 *U. S. Stat. at Large*
VOL. XVII.—37

*p.* 313—14,) as the dotted line represents it, and the quarter post set—as therein shown, (which is about ten rods west of a straight line,) and where, if that be so, such post appears still to be. Defendant is in possession up to the dotted line, and plaintiff brings this action to recover possession of what the straight line would give him.

The case was tried by a jury, who, after the case had been given to them, and they had retired, after deliberation, came into court, and handed the judge a paper designed to be a verdict in favor of the plaintiff, but it was informal and defective; thereupon, the judge prepared in writing a general verdict, leaving a blank in which the jury were to insert the party in whose favor they were to find, and was about to direct the jury to retire with said blank verdict, to reconsider their finding, and find a verdict in proper form, when the counsel for defendant requested the court to instruct the jury to return with their verdict, an answer in writing to the following question of fact: Was the stake mentioned in the evidence as the quarter post, placed there by the government surveyors, when making the survey of the public lands?

The case finds that the plaintiff's counsel objected on the ground, that the court had not in the law, any authority or power to require the jury to answer said question, and in support of said objection, he read to the court, from Gen. Stat. ch. 66, sec. 218, as follows: "In every action for the recovery of money only, or specific real property, the jury in their discretion may render a general or special verdict; in all other cases, the court may direct the jury to find a special verdict in writing, upon all, or any of the issues;" and there stopped reading, and remarked, that that was all the law or statutory provision upon the subject that he was aware of, omitting thereby the rest of the paragraph, as follows: "and in all cases may instruct them, if they render a general verdict, to

Jaspers v. Lano.

find upon particular questions of fact, to be stated in writing, and direct a written finding thereon."

The case further finds, that the judge, thereupon, supposing that that was all that was contained in the statute upon the subject, sustained and allowed the said objection, and, handing the said question in writing, with the form of the verdict in blank that he had prepared, to the jury, instructed them, that they might, or might not, at their discretion or pleasure, return an answer to the said question.

The case also finds, that the counsel for defendant excepted, because the said question was thus submitted, instead of with a peremptory direction to the jury to answer the question.

The jury returned a general verdict for plaintiff and did not answer said question. This case was settled June 28, 1870. A motion for a new trial thereon was argued at the September term of the district court for Carver county, and granted Sept. 24, 1870.

The judge's reasons therefor were filed in writing, in which he states, that he was about to direct the jury to answer the question as requested by defendant, "when the plaintiff's counsel objected, and then read the statute, as stated by plaintiff's counsel. I supposed that the provision of law conferring upon the judge the power of requiring such questions to be answered had been left out of the revision of 1866, and therefore, I had no authority to do anything more than leave it to the discretion of the jury to answer the questions or not, and did, therefore, thus submit it.

" The plaintiff's counsel took an exception to its being submitted at all at this stage of the case; the counsel for the defendant claims that he took an exception, because I submitted the question as *discretionary*, instead of making a peremptory direction to the jury to answer the question. I am not sure that he did, or did not take such exception, but am inclined to

give him the benefit of having so done, and will assume that he did so, and direct that the case be so amended as to show such exception."

The appellant in his reply to the respondent's argument insists upon this, that the defendant's exception set out in the settled case is an "*afterthought*," and should be disregarded; that the judge had no power to direct an amendment at that stage of the case, and without notice to the other party.

It is to be observed, however, that it is only indirectly, and from this decision, that it appears that the settled case did not originally contain the exception, but, taking that to have been so, it by no means follows, that the amendment was not directed upon notice and argument.

The return, indeed, does not show that such was the case; but neither does the return show upon what ground the motion for a new trial was made, nor, except by inference, that it was made upon notice; and we think it is to be inferred from the language of the decision, that at the hearing of that motion, if not before, the defendant asked for such amendment. This we think appears from the words, "the defendant claims that he took an exception," &c., the judge here apparently referring to what passed at that hearing, as likewise, in the preceding paragraph of the decision, the words, "*as stated by plaintiff's counsel*," apparently refer, not to the statement in the settled case of what the counsel did at the trial, but to what the counsel had stated on the argument, that he did. If this be so, plaintiff had an opportunity at the argument of satisfying the court that no such exception was taken. If, however, it were not so, it was for him, nevertheless, to see that the return disclosed the fact; and if notice be necessary, it will, therefore, be presumed to have been given.

If, then, the amendment were applied for on notice, or what comes to the same thing; if it were applied for at the argu-

Jaspers v. Lano.

ment without previous notice, and no objection made by plaintiff on that account to the entertaining it, it is no ground of objection, that the judge directed it to be made at the time of granting the order for a new trial.

The judge further states, that he denied the request of defendant's counsel, not as a matter of discretion, but, because he supposed he had not the power to enforce a peremptory direction; that is, taking this with what precedes, the judge would have directed the jury to answer the question, if he had supposed he had the power to do it.

He had the power, in the exercise of a sound discretion, but he thought that he had not; therefore, he did not make a mistaken use of the power, but a mistake as to its existence. Because of such mistake, he refused to exercise it in defendant's favor, as he would otherwise have done.

He might have directed the jury to give a specific answer to questions proposed in writing, or he might have refused to direct them to do so, but it would be error in him to refuse for the reason that he had no power to direct them to give such answer. *Russell vs. Conn,* 20 *N. Y.* 81; 14 *East.* 395.

Nor is plaintiff's objection that the question came too late well taken. If the jury had already agreed in a general verdict for him, it could not embarrass them, however late the hour, or however fatigued they might be, to be required to answer any question material to the issue, for they must have already passed upon it; moreover, though they might have agreed to return a verdict for him, it appears from the case, that they had not given expression to that agreement.

It would not be error in the judge, but a proper exercise of his discretion, to refuse to direct them to answer any question not material, (*Finch vs. Green,* 16 *Minn.* 355,) or one too uncertain and indefinite to admit of a categorical answer.

Such a question as the latter, might indeed be properly enough

also characterized as an irrelevant and immaterial inquiry, and in the present case, we think that appellant's objection to the question proposed, that it was thus indefinite and uncertain, is well taken.

More than one stake had been mentioned in the evidence as a quarter post.

The district judge, taking it for granted that the post intended by the question was the one shown on the diagram which defendant testified was set by the government surveyors in his presence, conceives that it was absolutely necessary, that the jury in order to enable them to render a just verdict, should have agreed as to whether or not it was set there by them, and that, therefore, their omission to answer the question raises a strong presumption, that they did not so agree; but we do not think that this is so.

The jury used the liberty which the judge told them they might. If they had been asked their reason for not answering a question which they might answer or not as they chose, it would be a sufficient reason, that they did not choose to answer it; and where a sufficient reason for silence appears, no presumption can arise that there was another.

Putting, therefore, the same construction upon the question that the district judge does, the reason fails for which he felt bound to grant a new trial.

But the indefiniteness of the question, may, we think, have well been the cause of the jury's silence.

Supposing that they had been peremptorily directed to answer the question, they might naturally and reasonably have objected, that it did not inform them which of the several stakes referred to as quarter posts was intended; and it would have been an improper use of his discretion, for the judge to refuse to make it more specific. It would be no answer to their objection to say that they *ought* to have no doubt, from the facts

and circumstances of the case, what the defendant intended by the question. The question should speak for itself.

Again, assuming that the question sufficiently indicated that said post shown on the diagram, was intended, the district judge, we think, is mistaken in supposing that it was absolutely necessary that the jury should have agreed on a negative answer to the question, before they could consistently find for plaintiff. What it was essential that the jury should first be agreed upon, was as to whether or not the government surveyors set said post in that place, *as and for the quarter post.* A categorical answer to the question proposed, would not settle *that* question, for the government surveyors might have set it there, for some other purpose. If answered in the affirmative, it would not, therefore, be inconsistent with a general verdict for plaintiff, and if not, how could it be material to the defendant whether it were answered or not? The question as it was proposed was not relevant to the issue.

The order granting a new trial ought, therefore, to be reversed, unless it should have been granted on the other grounds, or some one thereof, on which said motion was made.

Though the return does not disclose the fact, the plaintiff's brief states, and the defendant's implies, and we therefore assume, that the grounds of the motion were, that the verdict is against evidence; error in law, occurring at the trial and excepted to; misconduct of plaintiff, or his attorney, in misleading the court on a matter of law at the trial.

As to misconduct, the district judge decides that there was no reason for supposing that the plaintiff's counsel intended to mislead the court. The defendant's counsel insists that the circumstances will scarcely permit the inference that plaintiff's counsel was innocent of an intent to mislead the court, in stopping in his reading where he did, or stating what he did. Those who were not present can scarcely be said to be quali-

fied to pass upon such a question. At any rate, we should not undertake to reverse the decision of one who was.

The objection that the evidence does not justify the verdict, is not open to the defendant, because the case does not purport to contain all the evidence.

Nor is this a technical objection on plaintiff's part; for example, the government field notes, as well as plat, were in evidence, as also a plat and survey of a road located on the section line between sections thirty-one and thirty-two, and the plaintiff states that both field notes, and road plat, and survey, as well as the government plats showed a straight line. The case as settled however, did not contain them; yet it is plain that they would, and ought to weigh with the jury on such a question, and in plaintiff's favor, if the facts are as plaintiff states.

As to alleged errors of law, other than the one already considered, they are as follows: Plaintiff had testified that he was over the line with defendant in 1864, and that defendant then showed him the line. On cross-examination, he further stated, "that Brunius and Sloan were with defendant and me when we went over the line."

Defendant then asked him, "Was Brunius then surveying the line?" which was objected to as not cross-examination, the objection sustained, and exception taken. What a third party was doing as the defendant was showing plaintiff the line, has no necessary connection with what they did.

Defendant urges, that it was material to show why, and with what care or scrutiny these parties were examining the line. If Brunius was surveying the line, it might be that he was doing it carefully, but we do not perceive how it tends to show that those who were not surveying it, were carefully scrutinizing it; nor does the fact that defendant was showing plaintiff the line, give any occasion for an inquiry whether

Brunius was surveying it for the purpose of ascertaining if it were the same survey to which other witnesses had testified, or a different one. That was a point wholly foreign from the examination in chief.

Two of the plaintiff's witnesses were asked on cross-examination, if they had not made certain statements out of court at a time and place, and to persons specified, as to matters relevant to the issue. Upon their denial, the defendant introduced testimony that they had, as he alleges. Plaintiff then proposed to recall the said witnesses and examine them in regard to such testimony, to which defendant objected, on the ground that the said witnesses had each been examined on the subject, and had free opportunity to qualify, explain or deny the statements, aforesaid, and had already, directly, and positively, denied such statements; that defendant, under the rule of evidence in such case, had been obliged to put the questions to them, and get their direct and positive answers, as a condition precedent to the privilege of contradicting them by other witnesses, to affect their credibility. The court overruled the objection and defendant excepted.

In such cases as this, it is not the *contradiction of the denial* that impeaches the witness, but the proof that he has made statements out of court, which show that his testimony at the trial must be untrue. Before testimony tending to prove this could be given, the defendant was obliged by the rules of evidence, to ask the witness the specific questions aforesaid, not only to give him an opportunity to recollect the facts, and if necessary to correct the evidence he had given, but also, that upon re-examination, he might, if he could, explain the nature, circumstances, meaning and design, of what he should afterwards be sworn to have said. 1 *Greenl. Ev.* § 462.

The plaintiff's offer, therefore, was entirely proper. If, upon re-examination, a mere repetition of the former denial of the

witnesses would have been unfair to defendant, under the circumstances, if such were given, as to which the parties differ, and the case not purporting to give the witnesses' language, affords us no opportunity to determine, the defendant should have applied to the court to strike it out. This, however he did not do.

The following instruction was excepted to: "If the jury believe that the quarter post before referred to, was properly set or located by the government's surveyors, [and such is the presumption of law,] and that the said post, and witness trees, have been destroyed, or obliterated, so that it cannot now be known where they were placed, then the plaintiff is entitled to recover so much land in this action, as will give him a straight line, not exceeding the amount claimed in the complaint."

Defendant assumes, that by "the quarter post referred to," is meant the post which he claims was set by the surveyors for a quarter post. Thereupon he argues, that it was error to allow the jury to go behind the fact that it *was* set, and inquire if it were properly done; that the post was not in a right line, but ten rods west of a right line from one section post to the other, and that the jury may have thought that was *not proper*, and so have found in favor of the straight line; but there is nothing in the case to warrant such an assumption.

As the rest of the charge is not given, it does not appear, and cannot be stated as a fact, in what sense the words "the quarter post before referred to" were used; but it would certainly seem, that the judge could not have meant what the defendant would have him be understood to have meant, for, in that case, he could not have spoken of the post and trees being thus obliterated.

There was no possible doubt of the location of the *defendant's* post, whoever put it there.

It was not pretended, that the post that the defendant swore

Jaspers v. Lano.

he saw the surveyors set, had been moved, or destroyed; on the contrary, he pointed out an existing post, and alleged that the government surveyor put it there, *as and for* the quarter post.

It is rather to be inferred from the whole case that the judge had been speaking of the quarter post, which by law the United States' surveyors were required to set on that section line, and referred to that in this instruction, and that he used "*properly*," in the sense of establishing the monument by marks and bearing trees, or by marks and mounds, and not to the place of setting it.

If defendant apprehended however any danger that the generality of the expression might mislead the jury, he should have asked for a more specific instruction in that regard.

It is said also, that in case the location of the post could not be determined, it should be found and located by the corners and distances specified in the field notes; but here again plaintiff asserts that the United States plat, and field notes, indicated a straight line, and such is the presumption. 2 *U. S. Stat.* 313 & 314. If they did, there is no error in the instructions. If they did not, the defendant should have made it appear. Error is not to be presumed.

Order granting new trial reversed.